RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3439-14T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

B.R.,

 Defendant-Appellant,

and

D.B.,

 Defendant.
________________________________

IN THE MATTER OF D.B.,

 Minor.
________________________________

 Argued April 6, 2017 – Decided May 11, 2017

 Before Judges Hoffman and Whipple.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Cumberland
 County, Docket No. FN-06-171-14.
 Jared I. Mancinelli, Designated Counsel,
 argued the cause for appellant (Joseph E.
 Krakora, Public Defender, attorney; Mr.
 Mancinelli, on the briefs).

 Jennifer A. Lochel, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General
 of counsel; James D. Harris, on the briefs).

 Danielle Ruiz, Designated Counsel, argued the
 cause for minor (Joseph E. Krakora, Public
 Defender, Law Guardian, attorney; Ms. Ruiz,
 on the brief).

PER CURIAM

 Defendant B.R. appeals from a December 2, 2014 order after a

finding she abused or neglected her son, Dave.1 We affirm.

 On the night of on June 10, 2014, in Vineland, while B.R. and

Dave slept in a back bedroom, D.B., Dave's father, allowed two

individuals to enter the house, so he could sell them drugs. Once

inside the home, one of the individuals followed D.B. into the

kitchen where marijuana was stored and attempted to rob him. D.B.

told the police he tried to grab the individual's gun, and during

the struggle, shots were fired. One of the shots hit a family

friend in the heel, as he attempted to run from the living room

to the back bedroom where Dave and B.R. were sleeping. Police

found a bullet hit the bathroom door, and another bullet had gone

1 Pseudonyms are used to protect the identity of the child.

 2 A-3439-14T4
through a window in Dave's bedroom and hit a neighbor's car parked

outside.

 The Vineland police arrested D.B. No charges were filed

against B.R., but the police called the Division of Child

Protection and Permanency (the Division). The police informed the

Division Dave and B.R. left the police station with D.B.'s mother.

An address for D.B.'s mother was provided to the Division

caseworker; however, when she arrived at the address provided, no

one was there.

 The caseworker went to the police station to interview D.B.

D.B., who initially refused to provide the caseworker with B.R.'s

contact information because he did not want B.R. and his son to

suffer because of something he did. D.B. told the caseworker B.R.

and Dave lived with him in his house, but he sometimes went to his

mother's house if he and B.R. were fighting. D.B. admitted selling

drugs out of the house. When asked if Dave was present during any

transaction, D.B. responded "not like beside me." D.B. also

admitted smoking marijuana every day, but he denied caring for

Dave while under the influence.

 D.B. reported B.R. knew he was "hustling," but she told him

to stop. Despite B.R.'s insistence, D.B. had continued to sell

drugs but was "willing to take the weight for all of this," and

"[B.R] had nothing to do with any of this." At the end of

 3 A-3439-14T4
conversation, D.B. gave the caseworker information for his sister

who knew how to reach B.R.

 The caseworker called the number and spoke with B.R. who

agreed to meet the caseworker. When the caseworker arrived, B.R.

told her she had been sleeping in a bedroom with Dave when she

heard gunshots. B.R. rolled off the bed with Dave, placing him

beside her on the floor. B.R. admitted knowing D.B. was selling

drugs out of the home. She also acknowledged she left Dave with

D.B. while she attended classes four days a week from 4 p.m. to

10 p.m. B.R. had been in a relationship with D.B. for five years.

She denied any substance abuse.

 The caseworker informed B.R. she would be performing an

emergency removal of Dave because the drug transactions out of the

house placed Dave in immediate danger. B.R. provided information

for her mother, so Dave could go there. The Division filed a

complaint seeking custody of Dave on June 13, 2014, and an order

to show cause hearing was held. While the Division originally

sought custody of Dave in its complaint, at the hearing, the

Division requested care and supervision of the child and custody

to remain with B.R. pursuant to a safety protection plan. B.R.'s

mother and her husband were to supervise all contact between B.R.

and Dave. The Division asked B.R. to submit to a drug screening

test.

 4 A-3439-14T4
 On July 21, 2014, the safety plan was lifted based upon B.R.'s

compliance with Division services. B.R. was living with her mother

and Dave at the mother's home. Both B.R. and D.B. were ordered

to complete substance abuse evaluations, continue parenting

classes, and sign releases of information to the Division. Legal

and physical custody of Dave remained with B.R.

 The fact-finding hearing took place on December 2, 2014. The

Division submitted its Investigation Summary, as stipulated by

B.R.'s counsel without objection or redactions. Defense counsel

did not call any witnesses nor did she present any arguments. The

Division argued both parents admitted drugs were sold from the

home, and thus, there was a substantial risk of harm to Dave.

 After reviewing the Investigation Summary, the trial judge

found, absent a finding of actual harm, "a finding of abuse and

neglect can be based on proof of imminent danger and substantial

risk thereof." The judge found both B.R. and D.B. failed to

exercise a minimum degree of care because they both admitted drugs

were being sold out of the home. Additionally, the judge noted

 gunshots being fired at the home is not
 something that would not be anticipated as
 possibly happening. The Court finds that by
 selling drugs from the home, while the child
 was in the care of [D.B.], those four nights
 a week, . . . placed the child at imminent
 risk of harm.

 5 A-3439-14T4
 The disposition order continued care and supervision with the

Division and custody of Dave with B.R., who was also ordered to

attend a psychiatric evaluation.

 The litigation was terminated on February 9, 2015. B.R. was

compliant with all Division recommended services, and the Division

kept the case open to provide B.R. with continued services.

Pursuant to the court's order, Dave remained in B.R.'s custody as

the "conditions have been remediated." This appeal followed.

 On appeal, B.R. argues she was denied effective assistance

of counsel because her lawyer did not prepare a defense, introduce

evidence or present opposition to the Division's case. She also

argues the Division's evidence did not establish abuse and neglect

within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b), and the child

faced no future danger from her. On December 9, 2015, B.R. was

granted leave to supplement the record to include certifications

addressing ineffective assistance of counsel claims.

 This court "ha[s] a strictly limited standard of review from

the fact-findings of the Family Part judge." N.J. Div. of Youth

& Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div.

2010) (citing Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)).

"[A]ppellate courts 'defer to the factual findings of the trial

court because it has the opportunity to make first-hand credibility

judgments about the witnesses who appear on the stand; it has a

 6 A-3439-14T4
feel of the case that can never be realized by a review of the

cold record.'" N.J. Div. of Youth & Family Servs. v. M.C. III,

201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Family

Servs. v. E.P., 196 N.J. 88, 104 (2008)). Moreover, "[b]ecause

of the family courts' special jurisdiction and expertise in family

matters, appellate courts should accord deference to family court

fact-finding." Cesare, supra, 154 N.J. at 413. We afford

deference to a trial court's findings "unless it is determined

that they went so wide of the mark that the judge was clearly

mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J.

596, 605 (2007).

 We turn to B.R.'s argument the Division failed to establish

she abused or neglected Dave within the meaning of N.J.S.A. 9:6-

8.21(c)(4)(b). She asserts the limited evidence in the record did

not establish she knew D.B. would be selling marijuana in the home

the night she slept in the back bedroom with Dave, and there is

no evidence she acted recklessly in disregard of imminent danger.

Additionally, B.R. argues the court failed to consider the

subsequent steps she took to remedy the situation starting with

the moment the Division made the emergency removal. We disagree.

 Pursuant to N.J.S.A. 9:6-8.46(b), a fact-finding hearing is

required to determine, by a preponderance of the evidence, if a

child has been abused or neglected. The Division must "demonstrate

 7 A-3439-14T4
by a preponderance of the competent, material and relevant evidence

the probability of present or future harm." N.J. Div. of Youth &

Family Servs. v. S.S., 372 N.J. Super. 13, 24 (App. Div. 2004)

(citation omitted), certif. denied, 182 N.J. 426 (2005). Title

Nine defines an "abused or neglected child" as one

 whose physical, mental, or emotional condition
 has been impaired or is in imminent danger of
 becoming impaired as the result of the failure
 of his parent or guardian . . . to exercise a
 minimum degree of care . . . in providing the
 child with proper supervision or guardianship,
 by unreasonably inflicting or allowing to be
 inflicted harm, or substantial risk thereof,
 including the infliction of excessive corporal
 punishment; or by any other acts of a
 similarly serious nature requiring the aid of
 the court.

 [N.J.S.A. 9:6-8.21(c)(4)(b).]

 The standard in deciding whether a guardian has failed to

exercise a minimum degree of care is one of gross negligence. G.S.

v. Dep't of Human Servs., 157 N.J. 161, 178-79 (1999). The failure

to exercise such a degree of care is "analyzed in light of the

dangers and risks associated with the situation." N.J. Dep't of

Children & Families v. R.R., 436 N.J. Super. 53, 58 (App. Div.

2014) (citing G.S., supra, 157 N.J. at 181-82). Additionally, the

court must consider whether "an ordinary reasonable person would

understand that a situation poses dangerous risks and acts without

regard for the potentially serious consequences." G.S., supra,

 8 A-3439-14T4
157 N.J. at 179. Ultimately, the court must determine whether a

parent "has acted with reckless disregard for the safety of

others." Ibid. (citing Fielder v. Stonack, 141 N.J. 101, 123

(1995); McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 306 (1970)).

 When there is an absence of actual harm, "a finding of abuse

and neglect can be based on proof of imminent danger and

substantial risk of harm." N.J. Dep't of Children & Families v.

A.L., 213 N.J. 1, 23 (2013) (citing N.J.S.A. 9:6-8.21(c)(4)(b)).

The court does not need to wait until the child is actually harmed

before taking action. In re Guardianship of D.M.H., 161 N.J. 365,

383 (1999) (citing N.J. Div. of Youth & Family Servs. v. A.W., 103

N.J. 591, 616 (1986)).

 Here, there is sufficient evidence to support the court's

finding of abuse or neglect because B.R. knew D.B. was selling

drugs out of the home where they lived with Dave. Not only was

B.R. aware D.B. was selling drugs, she knew D.B. was smoking

marijuana daily and left Dave alone with him while she attended

school four nights a week. Whether she knew he would engage in

drug transactions resulting in a shooting that particular night

is irrelevant because the risk was ubiquitous.

 An "ordinary reasonable person" would understand having a

child stay in a home where drugs are being sold and stored places

that child in a "situation [that] poses dangerous risks." See

 9 A-3439-14T4
G.S., supra, 157 N.J. at 179. B.R.'s awareness and inaction

demonstrated indifference to the serious danger and placed Dave

in substantial risk of harm. One does not need to be able to

predict the future to appreciate inherent risks.

 B.R. argues the court should have considered her immediate

compliance with the Division and the steps she took after the

Division's referral to alleviate the risk of harm. The Court in

New Jersey Department of Children & Families v. E.D.-O., instructed

the statute is focused on the "parent's conduct at the time of the

incident to determine if a parent created an imminent risk of harm

to the child." 223 N.J. 166, 189 (2015). Here, while B.R.'s

steps to alleviate the risk of harm to Dave are laudable, they do

not overcome her inaction prior to the Division's intervention.

 Lastly, B.R. argues her counsel was ineffective because she

did not present any witnesses or arguments in her defense, and the

order finding abuse or neglect should be vacated because the trial

court conducted the fact-finding hearing "on the papers." B.R.

does not identify any witness or evidence her counsel did not

utilize that would have changed the outcome of the proceeding.

 In New Jersey Division of Youth & Family Services v. B.R.,

192 N.J. 301 (2007), the Supreme Court adopted the test developed

in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984), and adopted by our Supreme Court in State v.

 10 A-3439-14T4
Fritz, 105 N.J. 42 (1987), for guardianship cases, to determine

whether counsel was ineffective.2

 We have adopted the Strickland standard for findings of abuse

or neglect cases. See N.J. Div. of Youth & Family Servs. v. M.D.,

417 N.J. Super. 583, 613-14 (App. Div. 2011); N.J. Div. of Youth

& Family Servs. v. N.S., 412 N.J. Super. 593, 643 (App. Div. 2010).

The defendant bears the burden of demonstrating a constitutional

violation, as the court will presume counsel acted competently.

United States v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 2046,

80 L. Ed. 2d 657, 667 (1984).

 The B.R. Court instructed what type of evidence and

certifications defendants should provide for ineffective

assistance of counsel claims. B.R., supra, 192 N.J. at 311. The

2 To prevail on an ineffective assistance of counsel claim the
defendant must establish the following:

 (1) counsel's performance must be objectively
 deficient - i.e., it must fall outside the
 broad range of professionally acceptable
 performance; and (2) counsel's deficient
 performance must prejudice the defense - i.e.,
 there must be a "reasonable probability that,
 but for counsel's unprofessional errors, the
 result of the proceeding would have been
 different."

 [B.R., supra, 192 N.J. at 307 (citing
 Strickland, supra, 466 U.S. at 694, 104 S. Ct.
 at 2068, 80 L. Ed. 2d at 697; Fritz, supra,
 105 N.J. at 58).]

 11 A-3439-14T4
Court stated the appellate counsel "must provide a detailed

exposition of how the trial lawyer fell short and a statement

regarding why the result would have been different had the lawyer's

performance not been deficient." Ibid. Such an exposition would

include an evidentiary proffer. Ibid. If a defendant claimed

trial counsel was ineffective for failing to produce expert or lay

witnesses, the "appellant will be required to supply

certifications from such witnesses regarding the substance of the

omitted evidence along with arguments regarding its relevance."

Ibid.

 B.R.'s certification does not rise to the level of the

"detailed exposition" required in B.R. In her certification, B.R.

details her attorney failed to discuss any defenses or witnesses

but does not provide specifics of what testimony could have been

presented or what type of arguments counsel should have made. See

B.R., supra, 192 N.J. at 311. The only witness testimony proffered

by B.R. was her mother's testimony about B.R.'s efforts to remove

Dave from D.B.'s home after the incident. As previously stated,

the critical issue here is the substantial risk of harm on the day

of the incident, not after the Division had already intervened.

 B.R. provided a certification from T. Gary Marshall, Deputy

Public Defender from the Office of Parental Representation. Based

upon his review of the record, he opined "[e]vidence or argument

 12 A-3439-14T4
also could have demonstrated that measures taken by the mother

even before the time of incident, including expressions of

disapproval, were able to dispel the element of recklessness

required to sustain a Title [Nine] violation." He opined B.R.'s

trial counsel "fell significantly below the reasonably acceptable

professional standards," and "these deficiencies had a reasonable

probability of permitting a trial court to reach an erroneous

result." B.R. argues the expert certification she provided

establishes other documents could have been presented in evidence,

but neither B.R. nor the expert certification identifies what

those documents are.

 B.R. also argues counsel failed to research relevant case

law, and the State was then able to establish a Title Nine finding

without proving the frequency or dangerousness of the

circumstances of drug sales. Ultimately, B.R. has not presented

any evidence or argument disputing the core facts of this case,

which are B.R. allowed her son to live in a home and in the care

of someone she knew was smoking marijuana daily and selling drugs

out of the home. B.R. has not established "that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different."

 We have recently cautioned against the practice of conducting

fact-finding hearings "on the papers," N.J. Div. of Child

 13 A-3439-14T4
Protection & Permanency v. S.W. and R.W., 448 N.J. Super. 180, 183

(App. Div. 2017), stating,

 [w]here there are contested facts in a Title
 Nine fact-finding hearing, forgoing testimony
 in favor of the submission of documents serves
 neither the defendant, who may be deprived an
 opportunity to present a meaningful defense,
 nor the Division, which may be limited in
 admitting all available proofs of a
 defendant's culpability.

 We instructed before a court allows a fact-finding hearing

to continue "on the papers," the judge must make sure the defendant

has been informed of his or her right to a hearing, right to

testify and call witnesses, the right to confront witnesses, and

the right for a judge to make credibility findings. Id. at 192.

In S.W. and R.W., we said defendant's trial counsel was ineffective

for failing to ensure defendant understood his right to a hearing

and did not make a knowing and voluntary waiver, id. at 193, and

the evidence in the record was insufficient to find defendant

abused or neglected his children. Ibid. B.R. argues her defense

suffered the same irregularities because her trial counsel did not

present arguments or witnesses, inform the court of any relevant

case law, and failed to communicate with B.R. She argues this

matter should be reversed because the hearing was conducted "on

the papers."

 14 A-3439-14T4
 In New Jersey Division of Child Protection and Permanency v.

J.D., we also cautioned trial judges to avoid deciding contested

trials "on the papers." 447 N.J. Super. 337, 353 (App. Div. 2016).

We emphasized the importance of credibility determinations in

contested cases, which require first-hand observations of

witnesses, and noted how without live testimony, the trial judge's

ability to make detailed factual findings may be "potentially

impair[ed]." Ibid. Despite our disfavor of the procedure used,

we found sufficient undisputed evidence in the record supported

the trial court's finding defendant abused or neglected his child.

Ibid.

 As in J.D., the undisputed evidence establishes B.R. abused

or neglected her child, and despite the use of a disfavored

procedure, a thorough review of the record supports the trial

court's determination.

 Affirmed.

 15 A-3439-14T4